# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES HUDSON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-435-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Charles W. Hudson, Jr. requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty years old at the time of the most recent administrative hearing (Tr. 1333). He has an eleventh grade education and has worked as an oil field laborer and gas welder (Tr. 1342-43). The claimant alleges he has been unable to work since January 22, 2004, due to heart attacks, a head injury, sleep apnea, high blood pressure, high cholesterol, congestive heart failure, three brain surgeries, and blocked arteries (Tr. 150).

**Procedural History**

On July 26, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 131-35). His application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 21, 2009 (Tr. 16-26). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-10-363-FHS-SPS and remanded to the ALJ with instructions to properly consider *all* the medical evidence in the record (Tr. 1136-1148). ALJ Doug Gabbard, II conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated December 7, 2012 (Tr. 1075-1094). The Appeals Council denied review, but this Court reversed the decision of the Commissioner in Case No. CIV-13-181-FHS-SPS and remanded to the ALJ with instructions to properly consider the claimant's GAF score and nonsevere impairments

(Tr. 1351-61). ALJ Kim D. Parrish conducted a third administrative hearing and again determined that the claimant was not disabled in a written opinion dated July 29, 2016 (Tr. 1298-1320). The Appeals Council denied review, so the ALJ's July 29, 2016, opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a) with occasional stooping, kneeling, and crouching and no exposure to unprotected heights or dangerous machinery (Tr. 1310). The ALJ also imposed the psychologically-based limitations of understanding, remembering, and carrying out simple, routine, repetitive tasks with occasional interaction with the public, coworkers, and supervisors (Tr. 1310). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *i. e.*, addresser, table worker, and sorter (Tr. 1318-19).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) consider his nonsevere impairments at step four; (ii) evaluate the opinions of treating physician Dr. O'Neill and consultative examiner Dr. Bayne, (iii) consider his Global Assessment of Functioning ("GAF") score of fifty, (iv) consider whether he had a justifiable excuse for noncompliance with treatment, and (v) evaluate the materiality of his substance abuse. The

-4-

Court agrees that the ALJ did not properly consider the claimant's nonsevere impairments at step four, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that, prior to the date last insured of June 30, 2008, the claimant had the severe impairments of a seizure disorder, ischemic heart disease, asthma, and affective disorder, as well as the nonsevere impairments of sleep apnea; high frequency sensorineural hearing loss, left worse than right; hypertension; hyperlipidemia; vertigo; restless leg syndrome; shortness of breath; shaking in his hands; history of abdominal pain status post cholecystitis and H pylori; possible diverticulitis; and amphetamine abuse (Tr. 1301-07). The relevant medical evidence reveals that the claimant began experiencing seizure activity in December 2007 (Tr. 278). On January 9, 2008, Dr. Michael Tribbey, M.D., from The Medical Neurologists, Inc., wrote that on secondary review of an EEG, "there [are] some subtle changes in the left parietal and posterior temporal region of the brain, which suggest an area of previous damage and possible epileptic behavior" (Tr. 281). The claimant was prescribed seizure medication and told not to drive until he had been event-free for six months (Tr. 281). The claimant was also treated in the ER for vertigo and headaches.

In March 2008, state reviewing physician Dr. Kenneth Wainner completed a Physical RFC assessment, opining the claimant could perform light work, including unlimited pushing and pulling, but that he should avoid climbing ladders, ropes, scaffolds, and hazards (such as machinery and heights) (Tr. 307, 309).

The claimant was also treated by Dr. Patrick O'Neill beginning August 11, 2008. He diagnosed the claimant with coronary artery disease, epilepsy, congestive heart failure, and anxiety initially, and added asthma, chronic obstructive pulmonary disorder, and bipolar syndrome on October 3, 2008 upon further treatment (Tr. 363, 395). On June 9, 2009, Dr. O'Neill completed a Physical Medical Source Statement, finding the claimant could lift/carry less than ten pounds frequently, and only lift/carry ten pounds occasionally, that he could stand/walk less than one hour in an eight-hour workday due to severe swelling and lumbar pain and stand/walk continuously for ten to fifteen minutes at a time, and sit a total of one hour in an eight-hour workday (Tr. 389-90). He further indicated that the claimant would need to lie down during the workday to manage pain, to the extent that he would need to elevate his legs above his heart an hour for every hour worked (Tr. 389). Additionally, he imposed the postural limitations of never climbing, balancing, kneeling, crouching, or crawling, and only occasionally reaching, handling, fingering, and feeling (Tr. 390). Due to his asthma and epilepsy, Dr. O'Neill indicated the claimant would also have environmental restrictions. In support of this statement, Dr. O'Neill referred to abnormal EEGs, abnormal echocardiogram, and restless leg syndrome that does not allow him to sleep well and which triggers his seizures. Dr. O'Neill indicated that the limitations he found had been applicable since September 2004 (Tr. 390).

As to his mental impairments, the claimant underwent a consultative examination with Dr. Everett Bayne on September 25, 2007 (Tr. 242-43). Dr. Bayne diagnosed the claimant with major depression, recurrent, secondary to chronic illness and assigned a GAF

score of fifty (Tr. 243). He further opined the claimant was unemployable (Tr. 243). Dr. Bayne indicated that the claimant could improve within the next twelve months with proper treatment (Tr. 243).

On November 1, 2007, state agency psychologist Carolyn Goodrich, Ph.D. found the claimant was markedly limited in his ability to understand, remember, and carry out detailed instruction and to interact with the general public (Tr. 259-61). She concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 261).

In his written opinion, the ALJ summarized the medical evidence at step two and summarized the claimant's testimony from multiple hearings as well as written statements provided by the claimant's wife and friend regarding the claimant's seizures at step four. He gave great weight to the opinions of the state agency psychologists and physicians, but further limited the claimant to sedentary work based on his subjective complaints (Tr. 1317). The ALJ assigned little weight to Dr. O'Neill's opinions because they were not fully supported by or consistent with the medical record as a whole, finding: (i) he applied his limitations from September 2004 but only began treating the claimant in 2008, (ii) his opinions were inconsistent with his own treatment notes, and (iii) his sitting limitation was inconsistent with the claimant's reported activities of daily living (Tr. 1316). The ALJ gave Dr. Bayne's opinion no weight because: (i) he opined on an issue reserved to the Commissioner, (ii) his mental status examination was "basically normal," (iii) he

provided no for his opinion that the claimant was unemployable, and (iv) the claimant did not receive any mental health treatment and treatment notes did not describe mental health related symptoms (Tr. 1316). Regarding the claimant's nonsevere impairments at step four, the ALJ concluded that their cumulative impact did not necessarily indicate limitations, reiterated that they were nonsevere and thus had a minimal impact on the claimant's ability to work, and noted they did not preclude the claimant from his daily activities during the relevant period (Tr. 1318).

The ALJ acknowledged that this case was before him on remand, but he nevertheless failed to follow the Court's instructions on remand as to the proper consideration of the claimant's nonsevere impairments at step four. Because the ALJ found that the claimant had severe impairments, any failure to find his *other* impairments severe is considered harmless error because the ALJ is still required to consider the effects of these impairments at all steps of the sequential evaluation, and to account for them in formulating the claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). The ALJ did, however, commit reversible error by failing

to account for the claimant's nonsevere impairments at step four, either by including limitations in the claimant's RFC or explaining why such limitations were unnecessary (Tr. 1318). *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them."). The Court notes the ALJ's attempt at the correct analysis but takes issue with the conclusory nature of his findings (Tr. 1318). The ALJ concluded that the cumulative impact of the claimant's nonsevere impairments did not necessarily indicate limitations, but failed to explain the reason for this finding other than to restate that they were nonsevere and did not impact his daily activities (Tr. 1318). Such conclusory analysis was insufficient in this case given the number and nature of the claimant's nonsevere impairments.

Because the ALJ failed to follow the Court's Order on remand as it related to the claimant's nonsevere impairments, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**